UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| In re: | ) Chapter 11 |
| EDISON MISSION ENERGY, et al.,[1] | ) Case No. 12-49219 (JPC) |
| Debtors. | ) (Jointly Administered) |

### FINAL DECREE TERMINATING THE
### REORGANIZATION TRUST AND CLOSING THE DESIGNATED CASES

Upon the motion (the "Motion")[2] of the EME Reorganization Trust (the "Reorganization Trust") to terminate the Reorganization Trust and for entry of a final decree closing the Designated Cases, as further described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the chapter 11 estates of the applicable Debtors have been fully administered as required by Bankruptcy Code section 350(a) and Bankruptcy Rule 3022, making no further administration necessary; and it appearing that all fees due pursuant to 28 U.S.C. § 1930 have been paid or will be paid; and due and sufficient notice of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The service address of the Reorganization Trust is: EME Reorganization Trust, c/o Akin Gump Strauss Hauer & Feld LLP, Attn: James Savin, 1333 New Hampshire Avenue NW, Washington, DC 20036.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

Motion required by Local Rule 3022-1 having been given, and after due deliberation and sufficient cause appearing therefor, and the Court having found that the relief requested in the Motion is in the best interests of the Beneficiaries of the Reorganization Trust, it is hereby ORDERED:

1. The Motion is granted as set forth herein.

2. The Managing Trustees are hereby authorized to terminate the Reorganization Trust in accordance with the terms of the Reorganization Trust Agreement following the final distribution to be made by the Reorganization Trust to the Beneficiaries.

3. Except as otherwise set forth herein, the Managing Trustees shall be discharged, as of the date of the termination of the Reorganization Trust, from their respective duties under the Plan and the Reorganization Trust Agreement.

4. Notwithstanding anything to the contrary contained herein, neither the discharge of the Managing Trustees in paragraph 2 above nor the termination of the Trust shall affect the rights, obligations or authority of the Managing Trustees or any officers (or other designees) of the Reorganization Trust to take any and all steps necessary to wind down the Reorganization Trust and otherwise comply with the Reorganization Trust Agreement with respect thereto, including, without limitation, (i) preparing, signing and filing any state, federal or other tax returns, declarations, reports or information returns or statements (and any related documentation) and preparing tax information for the Beneficiaries of the Reorganization Trust, (ii) communicating with applicable taxing authorities regarding any tax returns, declarations, reports or information returns or statements filed by the Reorganization Trust or related tax matters, (iii) managing bank accounts of the Reorganization Trust (and signing any and all documentation with respect thereto), (iv) serving as the Reorganization Trust Designee (as

defined) in accordance with the terms of this Final Decree, or (v) addressing any other matters relating to the wind down of the Reorganization Trust (the "Wind Down Activities").

5.  The Reorganization Trust shall withhold, from the final distribution made by the Reorganization Trust to the Beneficiaries, Wind Down Funds in an amount that is determined in good faith to be necessary to pay the reasonable and necessary costs and expenses, including professional fees, associated with the Wind Down Activities. Following the conclusion of the Wind Down Activities, should any Wind Down Funds remain after the payment by the Reorganization Trust of all costs and expenses associated with the Wind Down Activities, such funds shall be donated to a charitable organization selected by the Managing Trustees.

6.  Notwithstanding anything to the contrary in the Motion, the treatment of the Trust Records shall be as follows:

    a. In connection with the termination of the Reorganization Trust, the Reorganization Trust will (i) pre-pay the cost of storing the Trust Records until December 31, 2017 (the "Termination Date") to the document storage vendor(s) maintaining such records or otherwise retain sufficient funds to pay the cost of storing the Trust Records until the Termination Date and (ii) appoint a designee (the "Reorganization Trust Designee") who shall be responsible for receiving and processing requests for access to, or copies of, the Trust Records under section 9.12 or section 9.10 of the Purchase Agreement. Upon pre-payment of the cost of storing the Trust Records until the Termination Date or otherwise retaining sufficient funds to pay the cost of storing the Trust Records until the Termination Date, the Reorganization Trust shall have no further obligation to pay any costs or expenses relating to, or arising from, providing access to, or copies of, the Trust Records under sections 9.12 or 9.10 of the Purchase Agreement.

    b. In accordance with sections 9.12 and 9.10 of the Purchase Agreement, and regardless of whether requests for books and records are submitted by (i) the NRG Parties[3] or (ii) third parties (each, a "Third Party Litigant") in any Legal Proceeding (as defined in the Purchase Agreement) being contested or defended by the NRG Parties solely in connection with those matters specified in section 9.10(a)(i) or 9.10(a)(ii) of the Purchase Agreement, the NRG Parties or the Third Party Litigant, as the case may be, shall be required to pay, in advance, any and all actual costs and expenses relating to, or directly arising from, accessing or copying the Trust Records, which, for the

---

[3] "NRG Parties" shall mean NRG Energy, the Purchaser and the Post-Effective Date Debtor Subsidiaries.

avoidance of doubt, shall include any and all actual costs and expenses relating to, or directly arising from, (a) conducting searches of any electronic or hard copy documents or records, (b) reviewing any electronic or hard copy documents or records for relevance or privilege, (c) processing, compiling or copying any electronic or hard copy documents for review or production or (d) any other similar matters relating to providing access to, or copies of, the Trust Records to the NRG Parties or any Third Party Litigant, as the case may be; provided, that (i) in the event that the Reorganization Trust Designee is required to obtain a protective order or other relief to ensure payment by any NRG Party or Third Party Litigant of the foregoing costs and expenses, the NRG Parties shall pay, in advance, all actual costs and expenses arising directly from seeking such relief and (ii) the NRG Parties shall be entitled to recover any costs and expenses paid by the NRG Parties under the immediately preceding clause (i) from any applicable Third Party Litigant. For the avoidance of doubt, the Reorganization Trust Designee shall not be required or compelled to provide access to, or copies of, the Trust Records to any NRG Party or Third Party Litigant that does not pay, in advance, the costs and expenses associated therewith in accordance with this paragraph 6(b).

c. Notwithstanding any provision of the Purchase Agreement, including, without limitation, section 9.12 of the Purchase Agreement, the Reorganization Trust Designee is authorized and directed to cause the destruction of all of the Trust Records on the Termination Date or as soon thereafter as is reasonably practicable.

d. Except for receiving and processing requests for access to, or copies of, the Trust Records under sections 9.12 or 9.10 of the Purchase Agreement, the Reorganization Trust Designee shall not be required or compelled to perform any other services or litigation support obligations under the Purchase Agreement. In addition, the Reorganization Trust Designee shall not have or incur any personal liability or loss in connection with serving as the Reorganization Trust Designee, and the Reorganization Trust Designee shall not be required or compelled to take any action, assume any obligation or pay any costs or expenses (including, without limitation, in connection with any Legal Proceedings being contested or defended by the NRG Parties or any other legal proceedings) that would cause the Reorganization Trust Designee to have or incur any personal liability or loss. For the avoidance of doubt, nothing contained in the Final Decree shall be deemed to impair any right to reimbursement held by the Reorganization Trust (or the Reorganization Trust Designee) under any section of the Purchase Agreement, including sections 9.12 and 9.10, in the event that any applicable costs or expenses are not paid by the NRG Parties or any Third Party Litigant.

7. The following chapter 11 cases are hereby closed: (i) Case No. 12-49219 filed by Edison Mission Energy; (ii) Case No. 12-49220 filed by Chestnut Ridge Energy Company; (iii) Case No. 12-49225 filed by Edison Mission Holdings Co.; (iv) Case No. 12-49231 filed by

4

Mission Energy Westside, Inc.; (v) Case No. 13-18703 filed by EME Homer City Generation L.P.; (vi) Case No. 13-18704 filed by Edison Mission Finance Co.; and (vii) Case No. 13-18705 filed by Homer City Property Holdings, Inc.; *provided, however*, that this Court shall retain jurisdiction as provided pursuant to Article XII of the Plan, the Confirmation Order, and this Final Decree.

8. Within fourteen days or as soon as reasonably practicable after entry of the Final Decree, GCG is directed to forward to the Clerk of Court a final claims register, all original proofs of claim and an updated mailing list, at the direction of the Clerk's Office.

9. GCG is authorized to (i) deactivate the public case administration website and toll-free restructuring hotline upon entry of the Final Decree or as soon as practicable thereafter; provided that GCG shall maintain a static version of the public case administration website, and upon the request of the Reorganization Trust or its professionals, post tax reporting information for the Beneficiaries of the Reorganization Trust to such website until December 31, 2017 and (ii) close the post office box dedicated to receiving mail in these chapter 11 cases upon the entry of the Final Decree or as soon as practicable thereafter.

10. Upon compliance with the requirements of paragraphs 8 and 9 above, GCG will be released and discharged from any and all responsibilities in the Debtors' chapter 11 cases.

11. Following entry of this Final Decree, GCG may destroy any and all physical copies of documents pertaining to these chapter 11 cases in its actual or constructive possession, including, but not limited to: (a) excess copies of notices, pleadings, plan solicitation documents, customized envelopes or any other printed materials; (b) letters, emails, facsimiles or other correspondence received in these chapter 11 cases; (c) all undeliverable mail and/or returned mail; and (d) all other materials related to these chapter 11 cases.

12. Entry of this Final Decree is without prejudice to the rights of the Reorganization Trust to seek to reopen the Designated Cases for cause or the rights of NRG to seek to reopen the chapter 11 case of Debtor EME for cause.

13. The Reorganization Trust is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Decree without any further action or approval by the Court.

14. To the extent not already paid, the fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Designated Cases, if any, shall be paid as soon as reasonably practicable after the date of entry of this Final Decree.

15. Upon entry of this Final Decree, the Remaining Cases shall be jointly administered, pursuant to Bankruptcy Rule 1015(b), under the caption:

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| MIDWEST GENERATION, LLC, et al.,[4] | ) Case No. 12-49218 (JPC) |
| Debtors. | ) (Jointly Administered) |

16. The Reorganization Trust shall have no liability for the payment of any fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Remaining Cases and no responsibility with respect to any other matters relating to the Remaining Cases.

---

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Midwest Holdings Co. (6553); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558).

17. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Final Decree shall be immediately effective and enforceable upon its entry.

18. The limited objection to the Motion filed by the NRG Parties is hereby overruled.

19. Pursuant to the Plan, the Purchaser or the applicable Post-Effective Date Debtor Subsidiary (as defined in the Plan) have assumed any and all liability for ComEd's Claim Nos. 1296-1299, 1300-1303, and 2055-64. All parties' rights are reserved as to the allowed amount of such claims.

20. To the extent that this Final Decree is inconsistent with (i) any prior order or pleading in the Designated Cases or the chapter 11 case of any of the Debtors or (ii) the Reorganization Trust Agreement, the Purchase Agreement or the Plan, the terms of this Final Decree shall govern.

21. This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Final Decree.

Dated: Dec. 22, 2016
Chicago, Illinois

J. Cox
Jacqueline P. Cox
United States Bankruptcy Judge